70 F.3d 61
 Lucinda J. BILLINGSLEY, Plaintiff/Appellee,
v.
ST. LOUIS COUNTY, Defendant,
James E. O'Mara; George M. Corcoran, Jr.; John A.
Grellner, individually and in their official
capacities as officials of St. Louis
County, Defendants/Appellants.
 No. 95-1413.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1995.
Decided Nov. 14, 1995.
 
 Patricia Redington, Clayton, MO, argued, for appellant.
 Counsel who presented argument on behalf of the appellee was Mary Anne Sedey, St. Louis, MO, argued (William E. Moench and Jon A. Ray, on the brief), for appellee.
 Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Lucinda J. Billingsley brought this action for monetary and injunctive relief pursuant to 42 U.S.C. Sec. 1983. She claimed that she was wrongfully discharged from her job as a St. Louis County Council Administrative Assistant because she did not support James E. O'Mara in his campaign bid for councilman. Defendants O'Mara, George M. Corcoran, Jr., County Council Chairman, and John A. Grellner, County Administrative Director, appeal the district court's order denying their motion requesting summary judgment based on qualified immunity grounds. We reverse and remand.
 
 I. Background
 
 2
 Billingsley was hired as an administrative assistant for St. Louis County in May 1982 and was assigned to work for various councilmen. In January of 1991 she began working exclusively for O'Mara. As O'Mara's assistant, Billingsley performed a wide range of administrative duties. She acted as his liaison in dealing with the public. She answered his phone calls and gathered and communicated information to him. Billingsley organized meetings and did research on proposed legislation. She also dealt with county officials and researched proposed developments. Her main role was as a conduit of information between O'Mara and his constituents. Billingsley was terminated in June of 1991. She then brought this suit against O'Mara for wrongful discharge, alleging a violation of her First Amendment rights. Specifically, she alleged that she was fired because she would not participate in O'Mara's election campaign. Billingsley also sued Corcoran and Grellner, claiming that they helped effectuate O'Mara's decision to terminate her.
 
 
 3
 Defendants filed a motion to dismiss or in the alternative for summary judgment. They alleged that there was no material issue of fact and argued that they were immune from suit. The district court found that material issues of fact did exist respecting Billingsley's job description and the reasons for which she was terminated. The court further held that it could not adjudicate the qualified immunity claim because the evidence was insufficient to determine whether Billingsley's conduct was constitutionally protected. Defendants appeal the trial court's ruling on the qualified immunity issue.
 
 II. Discussion
 
 4
 The trial court's denial of the motion for summary judgment is reviewed de novo. U.S. ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir.1992). Therefore, we employ the same standard that was used in the district court. Cole v. Bone, 993 F.2d 1328, 1331 (8th Cir.1993). Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 5
 The Supreme Court set out the test for qualified immunity in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It held that government officials are generally immune from suit in performing discretionary duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. The court reaffirmed the test in Mitchell v. Forsyth and stated that qualified immunity is more than a defense to suit; it grants government officials the right not to be subject to the burden of trial at all. 472 U.S. 511, 526, 105 S.Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985).
 
 
 6
 To prove that a clearly established right has been infringed, plaintiffs must do more than assert that an abstract right has been violated. Runge v. Dove, 857 F.2d 469, 472 (8th Cir.1988). They "must make a 'particularized showing' that a 'reasonable official would understand that what he is doing violated that right' or that 'in the light of preexisting law the unlawfulness' of the action was 'apparent.' " Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).
 
 
 7
 In her affidavit opposing the motion for summary judgment, Billingsley alleged that O'Mara told her the dismissal was not based on her performance but rather it was "purely political." For purposes of this appeal, defendants accept Billingsley's allegations as true. The underlying issue, then, is whether the defendants violated a clearly established right when they discharged Billingsley because of her political affiliation. The wholesale practice of dismissing public employees based on their political affiliation is prohibited under the First and Fourteenth Amendments. Elrod v. Burns, 427 U.S. 347, 367-72, 96 S.Ct. 2673, 2686-89, 49 L.Ed.2d 547 (1976) (plurality opinion). Elrod recognized an exception to this rule for those employees who hold policymaking positions. Id. The Court focused on the nature of the employee's position in determining whether the employee was a policymaker, stating that policymakers are likely to have broad responsibilities that are not well-defined. Id.
 
 
 8
 The Supreme Court further elaborated on the constitutionality of patronage dismissals in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In Branti, the Court modified the Elrod standard by stating that the ultimate inquiry is not whether the employee is a policymaker. Branti, 445 U.S. at 518, 100 S.Ct. at 1294-95. Instead, the Court held that patronage dismissals are only warranted when party affiliation is essential for effective performance of the particular job.[1] Id.
 
 
 9
 In the aftermath of Elrod and Branti, various tests have been developed to determine when political affiliation is an appropriate condition for a particular job. As Justice Scalia has noted, "the 'tests' devised to implement Branti have produced inconsistent and unpredictable results." Rutan v. Republican Party of Illinois, 497 U.S. 62, 112, 110 S.Ct. 2729, 2757, 111 L.Ed.2d 52 (1990) (Scalia, J., dissenting).
 
 
 10
 In the present case, we believe that the existing law did not clearly prohibit dismissal of a county council administrative assistant based on her lack of political loyalty to the legislator to whom she was exclusively assigned. We have recognized that government employees' "first amendment rights may have to yield to the government's vital interest in maintaining governmental effectiveness and efficiency if their private political beliefs would interfere with their public duties." Barnes v. Bosley, 745 F.2d 501, 505 (8th Cir.1984), cert. denied, 471 U.S. 1017, 105 S.Ct. 2022, 85 L.Ed.2d 303 (1985). We held in Barnes that political affiliation was not an appropriate requirement for employees in a clerk of court's office who mainly performed ministerial duties. 745 F.2d at 508. The defendants in that case attempted to show that the plaintiffs held policymaking positions because they were involved with mailing procedures and the dress code and ordered office supplies. Id. We held, however, that those duties did not encompass areas that would be influenced by the plaintiffs' political viewpoints. Id.
 
 
 11
 In contrast, a staff legal assistant who advises the circuit clerk as to legal and personnel matters and represents him in judicial and administrative proceedings can be terminated based on political affiliation. Bauer v. Bosley, 802 F.2d 1058 (8th Cir.1986), cert. denied, 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987). In Bauer, we found that an attorney-client relationship existed between the staff legal assistant and the clerk. Id. at 1062-63. Therefore, we held that the newly elected clerk was not compelled to keep his predecessor's appointed staff legal assistant, but was entitled to select an attorney of his choice to fill the position of trust and confidence. Id.
 
 
 12
 It is clear, then, that under Barnes a government worker who performs technical, ministerial tasks cannot be discharged based on his political beliefs. Bauer established that a government worker who is in a confidential position can be dismissed on account of his political affiliation. Between these two polar positions, however, a broad range of positions exists for which there are no clear guidelines. Accordingly, we cannot say that defendants should have known they were violating a clearly established right.
 
 
 13
 Defendants could have reasonably believed that the duties of an administrative assistant were not merely technical, as in Barnes. Billingsley was the sole intermediary between O'Mara and his constituents. She received calls from citizens, transmitted the information to O'Mara, and communicated his response to them. She also performed a broad range of duties that dealt with sensitive issues ranging from proposed legislation to county development projects. It was thus reasonable for O'Mara, holding as he did a legislative position, to demand personal political loyalty from the one staffer--Billingsley--who acted as a conduit of information to and from O'Mara's constituents. See Hudson v. Burke, 913 F.2d 427, 432-33 (7th Cir.1990) (holding that legislative aides could be terminated on account of political affiliation when they investigated and reported facts that provided input on sensitive governmental issues).
 
 
 14
 Granted, the relationship between Billingsley and O'Mara was not that of attorney-client, as in Bauer. However, O'Mara could reasonably have assumed that the relationship between a county councilman and his exclusive administrative assistant is confidential in nature. Therefore, O'Mara's decision to dismiss Billingsley and select an assistant in whom he had complete confidence and trust was not clearly prohibited.
 
 
 15
 Under existing law, a county council administrative assistant does not have a clearly established right to be free from patronage dismissals. As a result, defendants could have reasonably believed that Billingsley's termination for political reasons was proper. Therefore, they are immune from suit.
 
 
 16
 The order denying the motion for summary judgment is reversed, and the case is remanded to the district court for entry of summary judgment in favor of the defendants.
 
 
 
 [1]
 In this case, both Billingsley and O'Mara were members of the Democratic party. Although Elrod and Branti dealt with situations in which the parties were of different political affiliations, we have recognized that these standards also apply when the employer and employee are of the same political designation but hold different views. See Barnes v. Bosley, 745 F.2d 501, 506 n. 2 (8th Cir.1984), cert. denied, 471 U.S. 1017, 105 S.Ct. 2022, 85 L.Ed.2d 303 (1985)