Carolyn SMITH, et al., Plaintiffs,

v.

Rebecca COOK, Defendant.

No. 95–4154–CV–C–5.

United States District Court,
W.D. Missouri,
Central Division.

Dec. 28, 1995.

Stuart Berkowitz, Platke & Berkowitz, St. Louis, Mo., for plaintiffs.

Robert Presson, Mo. Atty. Gen. Office, Jefferson City, Mo., for Movants.

Jeremiah W. Nixon and James R. McAdams, Mo. Atty. Gen. Office, Jefferson City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before this Court are defendant's Motion for Summary Judgment, plaintiffs' Opposition, plaintiffs' Motion for Summary Judgment, and defendant's Opposition. For the following reasons, defendant's Motion will be granted and plaintiffs' Motion will be denied.

### Background

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging that defendant violated their rights under the First and Fourteenth Amendments of the United States Constitution by terminating their employment with the Secretary of State's office. All plaintiffs were hired by former Secretary of State Judith Moriarty, however, Moriarty and defendant belong to the same political party. Defendant argues that this case must be dismissed because plaintiffs Smith, Kindle, and Toalson were properly terminated due to their policymaking or confidential employee status. Further, defendant argues that plaintiff Lawson's dismissal was not violative of the First and Fourteenth Amendments because he was discharged for incompetence and because there was no position for him to occupy. Finally, defendant contends that she is entitled to qualified immunity.

### Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving

party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Rafos v. Outboard Marine Corp.,* 1 F.3d 707, 708 (8th Cir.1993) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Only if "no reasonable jury could return a verdict" for plaintiff will a summary judgment be granted. *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991) (citations omitted).

■ A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A plaintiff opposing a properly supported motion for summary judgment, however, may not rest upon the allegations of his pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

## Analysis

### I. Defendant's Motion for Summary Judgment

Plaintiffs have alleged in their complaint that they were dismissed due to their political association with Judith Moriarty. (Pls.' Compl. at ¶ 14). They claim that their dismissals violated their right to free political expression under the First and Fourteenth Amendments. *Id.* at ¶ 1.

Even if these allegations are taken as true, the United States Supreme Court has held that public employees may be discharged based on their political affiliations without violating the Constitution if the employees are in either policymaking or confidential positions. *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976). *Branti* and *Elrod* have been extended by the Eighth Circuit to encompass patronage firings from within the same political party.

*Bauer v. Bosley,* 802 F.2d 1058, 1062 n. 2 (8th Cir.1986) (*Elrod* and *Branti* apply when the discharged employee and the hiring authority are from the same party).

■ The question before this Court then, is whether the plaintiffs occupied policymaking or confidential positions in the Secretary of State's Office.[1] Specifically, this Court must decide "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 520, 100 S.Ct. at 1295. Under consideration are the particular responsibilities of the position and whether the employee is a policymaker, privy to confidential information, or a communicator. *Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241 (1st Cir.1986).

### A. Plaintiffs Smith and Kindle

Smith occupied the position of Legislative Director for Judith Moriarty. Her duties included, "promoting legislation that the Division Directors and Deputy Secretaries desired ..., monitoring legislation that would have a negative impact, or even a positive impact ... on the Secretary of State's Office, [and] bringing that legislation to the appropriate persons' attention." (Def.'s Ex. E, Smith's Dep. at 67 [herein after Smith] ). Smith made sure someone was available to testify on behalf of the Secretary of State's office at legislative hearings, and she even testified herself on one occasion, speaking for the Secretary of State's office. *Id.* at 47–48. In addition, Smith was responsible for Moriarty's First Vote Project. *Id.* at 67. Her duties included assisting with press releases, answering telephones, and responding to mail from the public. *Id.*

Kindle was Moriarty's acting Communications Director/Public Information Officer, and he held the position of Director of First Vote Project. During a public hearing in front of a Management Review Team on July 13, 1994, Kindle testified as to his duties.

---

**1.** Courts in this circuit differ on whether the determination of this issue is a question of law or a question of fact. *See Horton v. Taylor,* 767 F.2d 471, 478 (8th Cir.1985) and cases cited therein. This Court, however, need not address

that matter because the facts presented in this case make the issue of employee status clear. *See Bauer v. Bosley,* 802 F.2d 1058, 1062 (8th Cir.1986); *Horton,* 767 F.2d at 478.

(Def.'s Ex. D). He stated that as First Vote Director it was his job "to personify" what Secretary Moriarty wanted because she was going to be up for re-election, and that his immediate job was "to make her look good." *Id.* at 417. As director, Kindle handled the majority of the press releases and public speaking engagements because he was the public spokesman for the program. (Def.'s Ex. K Kindle's Dep. at 21–22 [hereinafter Kindle]).

As acting Public Information Officer for Moriarty he was her primary spokesman. *Id.* at 43. He wrote her speeches and responded to the public and media on her behalf. *Id.* In fact, Kindle admitted that it was customary for a press officer to take on the persona, and become the representative, of the elected official he or she worked for. *Id.* at 49.

These duties described by Smith and Kindle make clear that their positions involved decisionmaking on matters where there would be room for political disagreement. The Legislative Director is the chief liaison between the Secretary of State's office and the State Legislature. The Legislative Director works closely with the Secretary of State to plan the legislative agenda of the office and often implements the agenda without direct supervision for the Secretary of State. The First Vote Director and Communications Director is the primary media contact. The Director is responsible for representing the Secretary of State to the public and for speaking on her behalf. The Supreme Court in *Branti* agreed that it is appropriate for a state official to believe that assistants who help write speeches, explain views to the press, or communicate with the legislature cannot perform effectively unless those persons share the same political beliefs and party commitments. 445 U.S. at 518, 100 S.Ct. at 1294 (referring to a state governor).

Testimony from Smith and Kindle, directly and by implication, shows their belief in the importance of a loyal and confidential relationship between their respective positions and the Secretary of State. Smith stated, "I serve at the pleasure of the Secretary, and I clearly understood this when I accepted my position." (Def.'s Ex. D at 61). Although she felt that she should retain her position if her political party remained in power, Smith recognized the appropriateness of her termination if the political party changed. (Smith at 64).

After explaining the First Vote program and his responsibilities concerning it, Kindle testified that Secretary Moriarty, as a political figure, "should not be held hostage to her staff," and that "it would be impossible to operate efficiently with any success if ... philosophical differences existed [between the Secretary and the Director]." (Def.'s Ex. D at 417). He further commented that "it is very difficult to operate a large staff or even a small staff when the people you work with don't believe in what you're doing." *Id.* at 417–18.

Defendant Cook testified that she did not trust Smith and stated, "if I were to hire a person who had the primary responsibility to speak on my behalf with the legislature it would have to be someone in whom I had confidence and who I felt the legislature would perceive as competent and loyal to me." (Def.'s Ex. J, Cook's Interrog. Answers at 4–5 [herein after Cook]). Regarding Kindle, defendant Cook wrote, "I did not respect Mr. Kindle's opinion nor did I believe he had sufficient experience to be my primary contact with the media. I needed someone in the role of my press liaison who had not participated in communicating with the press on behalf of my predecessor with its possible attendant conflicts and an individual who could credibly represent me in the public eye." *Id.* at 5. Defendant also did not believe that Kindle would have been an appropriate representative for her in connection with the First Vote program. *Id.* She believed that "in the eyes of the public, he had become inextricably linked with and was the cause of some of the problems of [her] predecessor." *Id.* at 5–6.

■ After reviewing the responsibilities of the Legislative Director, the Communications Director/Public Information Officer, and the First Vote Director, this Court finds that plaintiffs Smith and Kindle held policymaking positions within the Secretary of State's office. They had access to confidential infor-

mation and communicated on behalf of the elected official to the public. These positions require trust and confidence from the Secretary of State, and the Secretary of State's office could not run effectively if she continually questioned the loyalty of her assistants.

In light of these findings, it is clear that party affiliation is an appropriate requirement for the effective performance of plaintiffs' former positions. *See Green v. Henley,* 924 F.2d 185, 187 (10th Cir.1991) (political loyalty is a valid justification for political patronage dismissals); *Williams v. City of River Rouge,* 909 F.2d 151, 153 n. 4 (6th Cir.1990) ("political affiliation" refers to commonality of political purpose and support, not solely political party membership). Accordingly, defendant's Motion for Summary Judgment is granted as to plaintiffs Smith and Kindle.

### B. Plaintiff Toalson

■ Before her termination, plaintiff Toalson was an administrative assistant serving as the secretary of James R. Kolb, Judith Moriarty's Executive Deputy and Chief Aide. Plaintiff Toalson worked as Kolb's personal secretary for five years before coming to the Secretary of State's office.

While plaintiff Toalson did not hold a policymaking position, she certainly was in a position of confidentiality. Judge Richard Arnold, while a Federal District Court Judge, determined that a County Judge could replace a secretary who had supported his political opponent. *Wagner v. Hawkins,* 634 F.Supp. 751, 753 (W.D.Ark.1986). He wrote, "[t]he court believes that it does not require much elaborate argument to demonstrate that loyalty and confidentiality are required from a person in the position of secretary." *Id.* He further held that "the County Judge is entitled to choose as a secretary someone whose loyalty and sense of common enterprise with him are not open to doubt. The effective working of the county government could well be jeopardized by any uncer-

tainty as to the confidentiality of matters entrusted to the County Judge's secretary. This is especially obvious from the fact that, according to the testimony, the secretary had access to all of the material in the County Judge's office." *Id.*

Similarly, Plaintiff Toalson had access to all the material in the Executive Deputy's office. Further, Judith Moriarty testified that plaintiff Toalson had duties beyond that of a secretary. (Def.'s Ex. B, Moriarty Dep. at 33 [hereinafter Moriarty] ). Plaintiff Toalson worked on personnel matters and had to be flexible to operate as Kolb's assistant. *Id.* at 33–34. She had to work with Directors, and when they had requests, the requests came to her attention first. *Id.* at 34. As an administrative assistant, she typed, took messages, and made arrangements for Secretary of State functions. *Id.* Moriarty not only stated that confidentiality was expected from the administrative assistant, but also that it was important to have someone you trust and can work well with in that position. *Id.*

This Court agrees with Judge Arnold's holding that a secretary may be in a confidential position. For reasons stated above, defendant's Motion for Summary Judgment must be granted as to plaintiff Toalson.

### D. Plaintiff Lawson

■ Plaintiff Lawson was hired by the former Secretary of State to work in the Local Records Division. Defendant argues that plaintiff Lawson was not fired for political reasons, but instead for incompetence and unproductivity. The Secretary of State's office had received reports from outside the office that he slept on the job, talked excessively on the phone, disrupted the work of others, had difficulties getting along with co-workers, and performed his own duties in an unsatisfactory manner. (Def.'s Ex. Q). Further, there was no opening or full time employee (FTE) slot for plaintiff when he was hired.[2]

---

**2.** Sue Barr testified by affidavit that while plaintiff Lawson was assigned to the Pettis County Courthouse, he spent long periods of time reading the newspaper and talking to county clerks. Barr was unsatisfied with plaintiff's work and reported his behavior to her superiors. Lynn

Morrow, Director of the Local Records Preservation Program, testified that plaintiff was not qualified for the position he held. (Def.'s Ex. M). He further stated that there was not a FTE slot for plaintiff's position, nor had there ever been a full time position. *Id.* Morrow advised defen-

Plaintiff, in rebuttal, simply states that he was fired for political reasons because he was terminated at the same time as other political hires and because he was not given a reason for his termination. No other evidence was advanced, and plaintiff Lawson does not dispute that there was no budgetary authority for his position. Plaintiff's bare assertion does not set forth sufficient specific facts to show that there is a genuine issue for trial. Furthermore, plaintiff Lawson's termination letter from Lynn Morrow correctly states that his position was eliminated. (Def.'s Ex. M).

Defendant has met her burden by showing that no fact dispute exists as to the cause for plaintiff Lawson's termination. Because plaintiff Lawson failed to challenge this assertion, and because employers have a "strong interest in conserving resources and dealing expeditiously with incompetent employees," *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir.1976) this Court must grant defendant's Motion for Summary Judgment as it applies to this plaintiff.

E. Qualified Immunity

■ Defendant has also argued that she is entitled to qualified immunity in this case. This Court agrees. The standard for determining whether defendants are entitled to qualified immunity is well established. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The Eighth Circuit Court of Appeals has recently addressed qualified immunity as it relates to political firings. *See Billingsley v. St. Louis County*, 70 F.3d 61 (8th Cir.1995). The court in *Billingsley* determined that "[i]n the aftermath of *Elrod* and *Branti*, various tests have been developed to determine when political affiliation is an appropriate condition for a particular job." *Id.* at 63.

The court held that existing law did not clearly prohibit the dismissal of an administrative assistant based on her lack of political loyalty to a county council member. *Id.* In reaching this conclusion the Eighth Circuit noted that the administrative assistant received calls from citizens, transmitted information, and dealt with sensitive issues such as proposed legislation. *Id.* at 63.

■ These duties are comparable, if not inferior, to the duties of the positions held by plaintiffs Smith, Kindle, and Toalson. Like the *Billingsley* court, this Court finds that defendant Cook could reasonably have assumed that her relationship to plaintiffs' positions were "confidential in nature" and therefore her decision to dismiss plaintiffs and hire people in whom she "had complete confidence and trust was not clearly prohibited." *Id.* Further, it was reasonable for her to assume that she could dismiss an incompetent employee. Accordingly, defendant is entitled to qualified immunity.

II. Plaintiffs' Motion for Summary Judgment

Plaintiffs' Motion addresses their Fourteenth Amendment Due Process claim. Plaintiffs contend that they are entitled to summary judgment because they, as Missouri employees, have a protected property interest and are protected from summary discharge by the State Personnel Law, Section 36.010, *et seq.* Mo.Ann.Stat. (Vernon 1994). The Missouri Court of Appeals recently determined that the Secretary of State's office is included within the definition of "agency," and "agency of the State," as used in the subsections plaintiffs claim are applicable to their case. *Laws v. Secretary of State*, 895 S.W.2d 43, 48 (Mo.Ct.App.1995). The *Laws* court found that as a result, pursuant to § 36.390.8, the Secretary of State's office must adopt dismissal procedures set out in subsection 5 or procedures "substantially similar to those provided for merit employees." *Id.* Defendant does not dispute that procedures had not been adopted

dant that plaintiff Lawson was an "incompetent and unproductive employee for whom [he] did not have a FTE slot." *Id.* *See* Def.'s Ex. N, O, P

for more employee affidavits criticizing plaintiff's job performance and personal skills.

at the time of plaintiffs' dismissal and that they did not receive a termination hearing as required by the subsection.

Defendant instead argues that she is entitled to qualified immunity because plaintiffs have not made a "particularized" showing that a reasonable official would have understood that terminating plaintiffs without a hearing violated their due process rights. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In addition, defendant argues she is immune from suit because her conduct did not violate "clearly established statutory or constitutional rights." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The *Laws* case was not decided until after plaintiffs were removed from their positions. Prior to *Laws,* the Eighth Circuit Court of Appeals had held that an employee who brought a claim alleging that his termination was based on partisan political reasons did not have a property right in continued employment and thus, had not been deprived of due process rights when he was denied a hearing. *Hartley v. Fine,* 780 F.2d 1383, 1385–86 (8th Cir.1985). *See also, Pace v. Moriarity,* No. 94–4154–CV–C–5, 1994 WL 759175 (W.D.Mo. Oct. 17, 1994) (holding that the Secretary of State's office was not an "agency" and therefore not subject to section 36.390). This Court finds that plaintiffs have not shown that they had a clearly established property right. In addition, existing law did not clearly prohibit the dismissal of plaintiffs without a hearing. As a result, defendant is entitled to qualified immunity.

Defendant Cook's decision to terminate plaintiffs Smith, Kindle, and Toalson as policymaking employees in the manner in which she did further supports qualified immunity. Even if defendant contemplated section 36.390.5, she reasonably could have assumed that they were in policymaking positions and thus, not entitled to a hearing. Mo.Ann.Stat. § 36.390.8 (procedures need not apply to employees in policymaking positions). As noted above, the *Laws* decision holding that policy-making employees were still entitled to a hearing because the Secretary of State's office had not adopted procedures specifically exempting them, was not decided until after plaintiffs were released. In light of existing law, defendant could have reasonably believed that she properly dismissed plaintiffs under the statute.

Regarding plaintiff Lawson, he clearly was not a policymaking employee subject to the exemption. The remedy provided for by 36.390.9, however, is a hearing in front of the personnel advisory board (PAB). Plaintiff Lawson failed to file an appeal with the PAB, and he has not contested the fact that the time has run for him to do so. *See* Mo.Ann. Stat. § 36.390.5 (employee has thirty days to file an appeal from the effective date of release) (Def.'s Ex. U).[3] Plaintiffs argue that the thirty-day time limit commences from the date an employee receives notice of the reasons for termination, and that plaintiffs were not provided with written reasons. Even if defendant was not immune from suit, plaintiff's claim would still fail. Plaintiff Lawson received a letter stating that his services were no longer necessary because his position had been eliminated. He was provided a reason for his termination. Plaintiffs' Motion for Summary Judgment must be denied.

## Conclusion

For the above stated reasons, defendant has shown that there is no genuine issue of material fact regarding the issue of whether plaintiffs Smith, Kindle, and Toalson were policymaking or confidential employees and whether plaintiff Lawson was terminated due to his political affiliation. In addition, defendant is entitled to qualified immunity on both of plaintiffs' claims.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is granted. It is further

ORDERED that plaintiffs' Motion for Sanctions and Second Motion for Sanctions are denied as moot. It is further

---

3. None of the plaintiffs have filed an appeal with the PAB. (Def.'s Ex. U).

ORDERED that plaintiffs' Motion for Summary Judgment is denied.