# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3620

_____

| | | |
|---|---|---|
| Jerry Langley, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Hot Spring County, Arkansas, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted:  September 13, 2004
Filed:  January 5, 2005

_____

Before LOKEN, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

LOKEN, Chief Judge.

In November 2002, C.T. "Jim" Homan was elected County Judge of Hot Spring County, Arkansas, defeating the incumbent. In December, Homan discharged Jerry Langley from his position as west end Road Foreman. Homan died in March 2003. The following month, Langley commenced this § 1983 action against the County, alleging that he was discharged because of "politics" in violation of his First Amendment rights of free speech and association. The district court[1] granted the County's motion for summary judgment, and Langley appeals. We affirm.

_____

[1]The HONORABLE ROBERT T. DAWSON, United States District Judge for the Western District of Arkansas.

The County hired Langley in 1998 and promoted him to west end Road Foreman in May 1999. Following his discharge, Langley asked Judge Homan for a written statement of reasons. Judge Homan responded with a Notice of Reasons dated January 8, 2003, in which he explained:

> Jerry, I told you that I did not keep you because [you] were a liability to me. . . . I have been through a county-wide election that has brought me face to face with the citizens of the county. . . . The perception of the citizens in the west end of the County is that the workers are not working hard enough . . . . I have come to the conclusion that there is a supervisory problem -- that you have not provided the kind of leadership I want. I was told repeatedly that your workers were observed NOT working, and NOT working on so many occasions that it appeared to the citizens in the area that the workers were not being told to work. I was asked repeatedly if I was going to make the changes necessary to get the workers working . . . I told them I would, and I have -- by choosing to hire someone in your stead.

The County also submitted an affidavit from County Judge James Bailey, Judge Homan's successor. Judge Bailey outlined the duties of Road Foreman and averred that the Foreman is a "policy-maker" who meets with the County Judge frequently, who "[s]erves as the eyes and ears for the County Judge throughout the County," and whose loyalty is necessary for the County Judge to effectively maintain county roads. Judge Bailey further averred that, during the 2002 campaign, many citizens complained about Langley's performance as Road Foreman: "I was with Judge Homan and personally heard numerous complaints."

In response to the motion for summary judgment, Langley submitted a four-paragraph affidavit. Without addressing the County's evidence of citizen complaints or Judge Homan's Notice of Reasons, Langley averred, "I was fired by Judge Jim Homan before he took office, when he advised me that I was being fired in order [to] replace me with a person who had campaigned for his election." Langley further

averred that he was not a policy-maker, that he did not have a confidential relationship with the County Judge, and that "there is a genuine issue of material fact as to whether I was doing an effective job."

The district court granted the County summary judgment because Langley failed to refute the County's evidence that he was fired for poor job performance, and because, even if Langley could prove "that his political affiliations motivated Judge Homan's decision, the position of road foreman is of such a nature that the county judge is entitled to have someone in that position that he believes to be politically loyal to him." We review the grant of summary judgment *de novo*, "affirming only when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law." Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 891 (8th Cir. 2000).

The First Amendment issue in this case stems from the Supreme Court's decision in Elrod v. Burns, 427 U.S. 347 (1976), as modified in Branti v. Finkel, 445 U.S. 507 (1980). Concluding that political patronage dismissals impinge upon public employees' First Amendment rights of speech and association, the Court held that a dismissal solely on account of an employee's political affiliation violates the First Amendment unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518. The question whether party affiliation or political loyalty is an appropriate requirement often turns on the extent to which the position involves policy-making or a confidential relationship with an elected official.

Like many circuits, we have extended the Elrod-Branti principle to include cases in which political affiliation was *a* motivating factor in the dismissal, rather than the sole factor. Barnes v. Bosley, 745 F.2d 501, 507 (8th Cir. 1984). Therefore, to resolve a claim under Elrod and Branti at the summary judgment stage, the district court first determines whether the plaintiff has submitted sufficient evidence that

political affiliation or loyalty was a motivating factor in the dismissal. If the plaintiff meets this burden, summary judgment must be denied unless the defendant establishes *either* that the political motive is an appropriate requirement for the job, *or* that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event. See Horton v. Taylor, 767 F.2d 471, 481 (8th Cir. 1985); Wagner v. Hawkins, 634 F. Supp. 751, 757 (W.D. Ark. 1986). The fact that a newly-elected hiring official discharges one or more at-will employees does not without more prove bad motive. If an official "lacks confidence in the assistants he has inherited from the prior administration for some reason other than their political affiliation, he is, of course, free to discharge them." Branti, 445 U.S. at 520 n.14.

1. Looking first at the question of motive, the County presented strong evidence that Judge Homan discharged Langley on account of citizen complaints of poor job performance. In response, Langley submitted an affidavit stating that Judge Homan "advised me that I was being fired in order [to] replace me with a person who had campaigned for his election." Langley submitted no evidence supporting this recollection, such as evidence that his successor as Road Foreman had campaigned for Judge Homan. Indeed, the successor is not even identified in the record. Langley's conclusory assertion that "there is a genuine issue of material fact as to whether I was doing an effective job" does not refute the County's evidence that poor performance was *the* bona fide reason for the discharge. On this sparse record, we agree with the district court that summary judgment was appropriate because Langley did not submit sufficient evidence supporting an essential element of his First Amendment claim under Elrod and Branti, that "politics" was a motivating factor for his discharge. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2. Alternatively, we agree with the district court that, even if Judge Homan dismissed Langley because of his political affiliation, summary judgment is proper because of the uncontradicted evidence that political loyalty is an appropriate requirement for the job of Road Foreman in Hot Spring County. In Arkansas, the

-4-

County Judge is the chief executive officer and is responsible for the construction and maintenance of county roads. See Ark. Const. amend. 55, § 3; Ark. Code Ann. §§ 14-14-502(a)(2)(A)(i), -810(a)(1). In Hot Spring County, the Road Department is the largest executive department for which the County Judge is responsible. The Road Foreman reports directly to the County Judge as chief executive and has significant contact with the public. In general, personal loyalty is "an appropriate requirement" where the individual "reports directly to the [chief executive] and his duties include public relations and responsibility for . . . long-range planning." Johnson v. City of West Memphis, 113 F.3d 842, 844 (8th Cir. 1997).

In Wagner v. Hawkins, a district court familiar with Arkansas government observed that "the foreman of the road crew in a rural county . . . is in many ways the Deputy County Judge." 634 F. Supp. at 753. After surveying the evidence, the court concluded, "The influence on important policy decisions exerted by the road foreman, as established by the testimony in this case, puts it beyond serious question that his is a policy job and that political loyalty to the County Judge is necessary for the effective performance of his job." Id. at 754. Citing Wagner v. Hawkins favorably, the Sixth Circuit reached the same conclusion about the position of a county road foreman in Kentucky. Hoard v. Sizemore, 198 F.3d 205, 213-14 (6th Cir. 1999).

In this case, Judge Bailey's affidavit was strong evidence that the position of Road Foreman in Hot Spring County involves the same responsibilities and the same need for political loyalty to the County Judge as the road foreman position at issue in Wagner v. Hawkins. In response, Langley submitted an affidavit asserting that he was not a policy-maker and did not have a confidential relationship with the County Judge. We agree with the district court that these conclusory assertions were insufficient to defeat summary judgment on this ground.

The judgment of the district court is AFFIRMED.

_____