# United States Court of Appeals
## For the First Circuit

No. 14-2172

SHEILA REYES-ORTA; JOSÉ L. CASTILLO-CARRILLO; CONJUGAL
PARTNERSHIP CASTILLO-REYES,

Plaintiffs, Appellants,

v.

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY; RUBÉN
HERNÁNDEZ-GREGORAT, in his individual and official capacity as
Secretary of Transportation and Public Works; BRENDA GOMILA-
SANTIAGO, in her individual and official capacity as Executive
Director of Human Resources; CÉSAR MALDONADO-VÁZQUEZ, in his
individual and official capacity as Human Resources Specialist;
INSURANCE COMPANY ABC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Barron, Hawkins,[*] and Lipez,
Circuit Judges.

Juan M. Frontera-Suau, with whom Kenneth Colon and Frontera
Suau Law Offices, PSC were on brief for appellant.
Michelle Camacho Nieves, with whom Margarita L. Mercado-
Echegaray, Solicitor General, and Zarel Soto-Acabá, Assistant
Solicitor General, Department of Justice, were on brief for

---

[*] Of the Ninth Circuit, sitting by designation.

appellees Rubén Hernández-Gregorat, Brenda Gomila-Santiago, and César Maldonado-Vázquez in their individual capacities.

Yassmin González-Vélez, Counsel for Puerto Rico Highway and Transportation Authority, was on brief for appellee Puerto Rico Highway and Transportation Authority and appellees Rubén Hernández-Gregorat, Brenda Gomila-Santiago, and César Maldonado-Vázquez in their official capacities.

————————————

January 25, 2016

————————————

**HAWKINS**, **Circuit Judge**.  Plaintiff Sheila Reyes-Orta alleges that she was stripped of various job duties and was ultimately terminated from her job at the Puerto Rico Highway and Transportation Authority ("PRHTA") because of her affiliation with the Popular Democratic Party ("PDP").  After striking certain exhibits, the district court granted summary judgment against her on her First Amendment political discrimination claims because (1) there was insufficient evidence that actions short of dismissal constituted adverse employment actions; and (2) absent any political discrimination, she would have been terminated in any event for nondiscriminatory reasons.  We reverse and remand.

## I.  Background

### A.  Facts

Reyes-Orta has worked for the Puerto Rico government for nearly three decades.  In 2001, she transferred from a position as a human resources program officer at the Industrial Commission to a higher position, human resources program chief, at the PRHTA.

In 2001-2002 and 2004, while the PDP administration was in office, the internal audit offices of both the Puerto Rico Industrial Commission and PRHTA investigated Reyes-Orta's "transfer-promotion."  The internal audit office of the Industrial Commission found that the certification of job duties

-3-

she provided to get the PRHTA position inaccurately stated that she had supervised clerical and secretarial personnel as an "essential duty" of her Industrial Commission position. The internal audit office also found that the certification was improperly signed by a fellow human resources program officer, who failed to verify its content and who failed to refer the matter to the Industrial Commission's human resources director. The office recommended that the investigation be referred to the legal division to determine the appropriate corrective measures.

The PRHTA's internal audit office, whose report was written by Juan Encarnación in 2004, also found that the certification was fraudulent, but it could not determine whether the certification was a "determining factor" in permitting Reyes-Orta's transfer. It recommended that the PRHTA's human resources department re-analyze Reyes-Orta's documents to determine if she should be certified as qualified; that the legal division evaluate the legality and validity of the documents; and that the agency take appropriate corrective action.

No further action was taken for five years. By January 2009, Reyes-Orta was in another position, director of the Office of Position Analysis, Compensation and Fringe Benefits at the PRHTA. That month, Luis Fortuño of the New Progressive Party ("NPP") took office as Governor of Puerto Rico after defeating the PDP incumbent in the 2008 general election. Rubén Hernández-

-4-

Gregorat, an NPP member, took over as the PRHTA's executive director. Between January and May 2009, Brenda Gomila-Santiago, also an NPP member, served as Hernández-Gregorat's aide. In June 2009, she took over as human resources director at PRHTA from Luis Sánchez-Casanova, who had occupied that position from January to May 2009.

On April 29, 2009, El Nuevo Día, the largest newspaper in Puerto Rico, reported that, according to a PDP legislator, PRHTA executive director Hernández-Gregorat had, four months after taking office, given his drivers and aides hefty salary raises while PRHTA was running a $300 million operational deficit and was at risk of having to lay off 30,000 public employees and to halt its projects. The article prompted Hernández-Gregorat to direct then-human resources director Sánchez-Casanova to investigate who had leaked the information to the PDP legislator. Reyes-Orta claims that, during that time, Sánchez-Casanova told her several times that she should be careful because the "top" wanted to "cut her head off" and that he was under pressure because he did not want to take disciplinary action against her. Reyes-Orta's co-worker Sonia Vélez-Vélez, who had joined the PRHTA at the same time as she, claims Sánchez-Casanova also told her during this time that he was feeling pressured by Hernández-Gregorat to terminate PDP employees, including Reyes-Orta and Vélez-Vélez, and that Hernández-Gregorat was looking for an

attorney to justify those terminations.

On May 19, 2009, Sánchez-Casanova wrote a report on his investigation, in which he stated that two witnesses had identified Reyes-Orta as the source of the leak, something Reyes-Orta denied. The report also stated that he had told Reyes-Orta that he was going to request a broader disciplinary investigation by the Office of Industrial Relations and that the leak was "unacceptable and that, if [Reyes-Orta was the source of the leak], she should stop [leaking information] . . . since it affected all of the colleagues of the area."

The report was sent to the Office of Industrial Relations, which then assigned César Maldonado-Vazquez, an NPP member, to conduct a formal investigation. Maldonado-Vázquez interviewed Reyes-Orta on August 31, 2009. According to Reyes-Orta, Maldonado-Vázquez told her that he knew she was affiliated with the PDP; that the past PDP administration had kicked him out; that the PDP administration "did whatever [it] want[ed] when granting steps for merit all over without having an assessment system"; and that she and other employees were going to be laid off because the resolutions that had allowed them to be transferred to PRHTA back in 2001 were illegal. Three days later, Reyes-Orta sent a letter to Hernández-Gregorat, Gomila-Santiago, Maldonado-Vázquez, and others repeating what Maldonado-Vázquez had said and stating that she felt humiliated and

politically discriminated against during the interview. She received no response.

Reyes-Orta claims that, soon after Gomila-Santiago took over as human resources director, she stripped Reyes-Orta of various job duties, and ignored Reyes-Orta's requests to have her computer fixed. As a result, Reyes-Orta had no computer between April 2009 and her eventual termination in May 2010 and had to depend on other employees to access the software programs she needed for her job.

In December 2009, Reyes-Orta received a letter from Hernández-Gregorat stating his intent to declare her appointment null because an audit had revealed that her 2001 transfer was illegitimate because she had falsely represented that she had experience supervising office personnel and thus was not qualified for her PRHTA position and because her transfer-promotion violated Puerto Rico's merit principle and free competition principle. According to the letter, the vacancy for her job should have been posted publicly before she was appointed.

In January 2010, Hernández-Gregorat issued Resolution No. 2010-01, which annulled several previous regulations, Nos. 2000-15, 2001-13, and 2001-24, because they ran counter to then-prevailing Puerto Rico law, including the merit principle. The resolution authorized the deputy executive director of PRHTA "to

take those measures which are legally pertinent for the transactions of personnel enacted by the Highway and Transportation Authority under the aforesaid Rulings be revised, corrected, or annulled pursuant to the applicable law."

At Reyes-Orta's request, an informal hearing regarding her termination was held in March 2010. The examining officer upheld Hernández-Gregorat's decision to terminate her because her appointment was null. Her official termination date was May 3, 2010.

## B. Procedural History

Reyes-Orta and her husband filed this lawsuit in May 2011, alleging that Defendants PRHTA, Hernández-Gregorat, Gomila-Santiago, and Maldonado-Vázquez violated their rights under the First and Fourteenth Amendments and Puerto Rico law. The district court dismissed Plaintiffs' Fourteenth Amendment claims and some state law claims at the motion to dismiss stage. After several rounds of briefing at the summary judgment stage, the district court dismissed Plaintiffs' First Amendment claims and declined supplemental jurisdiction over the remaining state law claims.

In its summary judgment order, the district court held that the El Nuevo Día investigation, the stripping of job functions, and the loss of Reyes-Orta's computer, "even taken together," did not constitute "adverse employment actions"

-8-

because there was no evidence that the El Nuevo Día investigation was directed at Reyes-Orta specifically or that she was investigated because of her political affiliation; that Defendants changed her job duties in any meaningful or illegitimate way; or that Defendants caused her computer problems. Reyes-Orta v. Highway & Transp. Auth., No. CIV. 11-1410 SEC, 2014 WL 4827406, at *5-8 (D.P.R. Sept. 29, 2014).

With regard to Reyes-Orta's claim that her personnel file was audited and that she was terminated due to political discrimination, the district court found that, even assuming Reyes-Orta established a prima facie case, Defendants had established a Mt. Healthy defense by showing that the PRHTA had even-handedly audited all personnel files and pledged to correct all past personnel transactions done under legally invalid resolutions. The court rejected Reyes-Orta's attempts to rebut this evidence with evidence that all of the personnel terminated as a result of these audits were PDP members and that the audits began even before Hernández-Gregorat issued Resolution No. 2010-01.[1]

Plaintiffs argue that the district court erroneously excluded some of their exhibits in evaluating their claims. They

---

[1] The district court also held that Plaintiffs' § 1983 claims against Maldonado-Vázquez were time-barred and that their civil rights conspiracy claims against all of the Defendants were inadequately pled. Reyes-Orta, 2014 WL 4827406, at *11-12. Plaintiffs do not appeal these decisions.

also argue that the district court wrongly relied on inadmissible evidence from Defendants and discounted Plaintiffs' evidence in evaluating Defendants' Mt. Healthy defense.

We agree that the district court erred in granting summary judgment and therefore reverse and remand the case.

## II. Standard of Review

A district court's grant of summary judgment is reviewed de novo. United States ex rel. Jones v. Brigham & Women's Hosp., 678 F.3d 72, 83 (1st Cir. 2012). Summary judgment is properly granted if the movant can demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists when a jury can reasonably interpret the evidence in the non-movant's favor. A "material" fact is "one that might affect the outcome of the suit under the governing law." Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 150 (1st Cir. 2006) (quoting Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994)).

A prima facie political discrimination claim has four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Ocasio-

-10-

Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011) (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010)).

If the plaintiff has sufficient evidence to establish a prima facie case, the burden then shifts to the defendants to show that "(i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Vélez-Rivera, 437 F.3d at 152 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286-87 (1977)). A defendant can defeat liability under Mt. Healthy "by showing that plaintiffs' positions were obtained in violation of Puerto Rico law and that, even if political animus was a factor, defendants would have taken corrective action anyway against every employee whose position was obtained in violation of law." Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 131 (1st Cir. 2004); see also Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49, 54-55 (1st Cir. 2014) (affirming summary judgment in defendants' favor where the government employer conducted agency-wide, merit-principle audits of all personnel, not just individuals of a particular party); Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 6 (1st Cir. 2012) ("[E]ven if a plaintiff shows an impermissible political motive, he cannot win if the employer shows that it would have taken the same action anyway, say, as part of a bona fide reorganization.").

-11-

Although similar at first blush to the familiar McDonnell Douglas burden-shifting scheme used in Title VII and other employment discrimination cases,[2] Mt. Healthy is different. Under the three-step McDonnell Douglas test, the plaintiff retains the burden of persuasion at all times. At the second step, the defendant's burden of production is only to articulate some legitimate non-discriminatory reason for its actions; the burden then shifts back to the plaintiff to show that the articulated reason is pretextual. However, under Mt. Healthy, there is no third step; the burden of persuasion does not shift back to the plaintiff. To establish a successful Mt. Healthy defense, it is the defendant's responsibility to persuade the factfinder that it would have made the same decision even if the illegitimate reason had not been a factor.[3] See Welch v. Ciampa,

---

[2] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

[3] This circuit has stated that, "[i]f the defendant succeeds in carrying its burden of persuasion as to its Mt. Healthy defense, the plaintiff may then 'discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor.'" Reyes-Pérez, 755 F.3d at 55 (quoting Padilla-García v. Guillermo Rodriguez, 212 F.3d 69, 77 (1st Cir. 2000)). This language makes an obvious point: in attempting to establish a Mt. Healthy defense by a preponderance of the evidence, the defendant must overcome any evidence adduced by the plaintiff. It must not be misconstrued to say that after the defendant has successfully established a Mt. Healthy defense, the burden of persuasion shifts back to the plaintiff. As we explained in Padilla-García:

> In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that

542 F.3d 927, 941 (1st Cir. 2008); Padilla-García v. Guillermo Rodriquez, 212 F.3d 69, 77-78 (1st Cir. 2000). Because all reasonable inferences are drawn in the non-movant's favor at summary judgment, Padilla-García, 212 F.3d at 73, a defendant cannot win at summary judgment unless the only reasonable interpretation of the evidence is that the plaintiff would have been dismissed in any event for nondiscriminatory reasons.

## III. Discussion

### A. Plaintiffs' Prima Facie Case

We address first the Plaintiffs' prima facie case. The first element of Plaintiffs' political discrimination claims (the parties having different political affiliations) not being disputed, we address the second, third, and fourth elements in turn.

discrimination was more likely than not a motivating factor. In this way, the burden-shifting mechanism is significantly different from the device used in other employment discrimination contexts, such as Title VII cases, where a plaintiff is required to come forward with affirmative evidence that the defendant's nondiscriminatory reason is pretextual. In a political discrimination case, the defendant bears the burden of persuading the factfinder that its reason is credible. The evidence by which the plaintiff established her prima facie case may suffice for a factfinder to infer that the defendant's reason is pretextual and to effectively check summary judgment.

212 F.3d at 77-78 (citations and footnote omitted).

### 1. Defendants' Knowledge of Reyes-Orta's Political Affiliation

The proof that Defendants knew about Reyes-Orta's political affiliation includes: (1) Reyes-Orta's and Vélez-Vélez's declarations that Sánchez-Casanova told them between January and May 2009 that Hernández-Gregorat was pressuring him to fire PDP members, including them; and (2) the September 2, 2009 letter Reyes-Orta sent to Hernández-Gregorat, Gomila-Santiago, and Maldonado-Vázquez, among others, complaining about Maldonado-Vázquez's political comments to her. Defendants object that the letter did not affirmatively state that Reyes-Orta was a PDP member, and that Reyes-Orta lacks personal knowledge of whether the recipients actually read the letter.

Reading the record in the light most favorable to the Plaintiffs (even striking the Vélez-Vélez declaration, as the district court did),[4] it is reasonable to infer that, given the

---

[4] The district court did not abuse its discretion in striking Vélez-Vélez's declaration. The district court gave a number of reasons for doing so: (1) Vélez-Vélez had not been announced as a witness for the Plaintiffs; (2) the statement was made solely to create an issue of fact to survive summary judgment, citing Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006); (3) her statement lacked foundation; and (4) her statement constituted inadmissible hearsay. The first ground is sufficient to justify the district court's decision. Under Federal Rule of Civil Procedure 37(c)(1),

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

-14-

multiple references in the letter to Maldonado-Vázquez's knowledge that Reyes-Orta was a PDP member, a reasonable reader would have understood Reyes-Orta to be affiliated with the PDP. As for whether Defendants received the letter, Reyes-Orta testified that she personally handed copies of the letter to Hernández-Gregorat's and Gomila-Santiago's secretaries and to the receptionist at Maldonado-Vázquez's office.  It is reasonable to infer from her testimony that Defendants received those copies, especially without counter-evidence that they did not.  See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Plaintiffs argue that this sanction is not warranted because (1) Defendants deposed Vélez-Vélez in her own political discrimination lawsuit against them, and she testified there to the same facts she stated in her declaration; and (2) in their responses to Defendants' interrogatories, Plaintiffs mentioned Vélez-Vélez as a witness to an alleged discriminatory statement by Hernández-Gregorat.  Plaintiffs did not make these arguments to the district court and therefore, we need not consider them on appeal.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003). Even if we were to consider the arguments on the merits, they are unpersuasive.  Close review of the dockets in Reyes-Orta's and Vélez-Vélez's respective cases shows that Vélez-Vélez's deposition did not take place until discovery had already closed and the motion for summary judgment was already filed in Reyes-Orta's case, leaving Defendants no opportunity to examine Vélez-Vélez about Reyes-Orta's case.  Plaintiffs' interrogatory response mentioning Vélez-Vélez did not give Defendants notice that Vélez-Vélez might know something about Sanchez-Casanova.  Since it is not clear that the failure to disclose was substantially justified or harmless, the district court did not abuse its discretion in striking the Vélez-Vélez declaration and its decision must be affirmed.

302, 316 n.14 (1st Cir. 2002) (finding it reasonable to infer that defendant received a faxed letter even though he testified he was not sure if he received it or not). Thus, this argument is also rejected, and we hold that Plaintiffs had sufficient evidence to sustain a finding that Defendants were aware of Reyes-Orta's PDP affiliation.

### 2. Adverse Employment Action

The district court and parties spend a great deal of time discussing whether Reyes-Orta suffered any adverse employment actions short of dismissal. This is somewhat academic. Since it is undisputed that Reyes-Orta was terminated, and that termination is an adverse employment action, Reyes-Orta can proceed with her First Amendment claim based on her termination whether or not the actions leading up to the termination were adverse employment actions. And even if they were not adverse employment actions, they could still be brought out at trial as evidence that her final termination was motivated by political animus.

That said, because Plaintiffs have urged throughout this litigation that certain actions taken against Reyes-Orta before dismissal are independently actionable as adverse

-16-

employment actions, we take the time here to explain why we reverse the district court's grant of summary judgment on this point.

"Actions short of dismissal or demotion, including denials of promotions, transfers, and failures to recall after layoff, can constitute adverse employment actions" if the actions, from an objective perspective, make an employee's work situation "unreasonably inferior" to the norm for his or her position, placing "substantial pressure on even one of thick skin to conform to the prevailing political view." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 (1st Cir. 2010) (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989) (en banc),[5] and Bergeron v. Cabral, 560 F.3d 1, 8 (1st Cir. 2009), abrogated on other grounds by Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009)). To determine whether changes in a work situation are "sufficiently severe to warrant the 'unreasonably inferior' description -- the factfinder should canvass the specific ways in which the plaintiff's job has

---

[5] As this circuit has stated before, "There is some question as to the continuing vitality of Agosto-De-Feliciano in light of the Supreme Court's ruling in Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990). Because we conclude, however, that there exist sufficient genuine and material factual disputes to warrant a trial even under the arguably more stringent standard set forth in Agosto-De-Feliciano, we do not reach this issue." Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 335 n.1 (1st Cir. 1993).

changed." Agosto-de-Feliciano, 889 F.2d at 1218. The plaintiff must prove by clear and convincing evidence that her new role is "unreasonably inferior to what the job is supposed to be." Id. at 1220.

Here, Reyes-Orta alleges in her unsworn declaration that the following were adverse employment actions:

(1) She was prevented from attending meetings related to her job duties and representing Gomila-Santiago and Hernández-Gregorat at meetings;

(2) Gomila-Santiago "gave express instructions that all [personnel appointment] assessments had to be consulted and performed by her office" and that, once Reyes-Orta complained, Gomila-Santiago "began to outsource the personnel specialized study which [Reyes-Orta] was supposed to supervise";

(3) Gomila-Santiago stripped Reyes-Orta of her capacity to "assign special studies to [her] office personnel" and she was "prevented from collaborating with" the co-Defendants;

(4) Gomila-Santiago implemented an additional screening mechanism for changes in payroll without Reyes-Orta's consent, which slowed down some of the work in her division;

-18-

(5)   Reyes-Orta was intentionally deprived of the use of her computer, the use of which was important to her job; and

(6)   Gomila-Santiago moved certain personnel files that were previously under Reyes-Orta's supervision to her own office and conditioned access to the files on written request and physical transfer from her secretary.

The district court disregarded evidence of some of these actions, Reyes-Orta, 2014 WL 4827406, at *7 n.7 (citing Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006), among others), and determined that the others did not constitute an adverse employment action, either individually or collectively, id. at *8.

As a preliminary matter, the district court abused its discretion in striking paragraphs 15-17, 19-22, and 27-28 of Reyes-Orta's unsworn declaration as contradictory to her deposition testimony. Those paragraphs were consistent with Reyes-Orta's deposition testimony and her written responses to Defendants' interrogatories. The district court thus should have considered the full list of adverse actions alleged by Reyes-Orta.

We do agree with the district court that there is little evidence that Defendants were responsible for the computer

problems, given that Reyes-Orta's computer issues started before Gomila-Santiago became the director of human resources and Reyes-Orta admittedly did not follow the proper steps to get a new computer. There is also little evidence from which to determine whether some of the duties taken away from Reyes-Orta, i.e., attending meetings, supervising the specialized personnel study, constituted a significant portion of what her job duties were supposed to be. However, given Reyes-Orta's contention that the personnel files removed from her office were her "primary tool for exercising [her] duties," and that she used them "daily," there is sufficient evidence to find that at least one of the alleged actions was an adverse employment action.

Further, when these actions are considered together, a jury could rationally conclude that the cumulative loss of job functions constituted an adverse employment action. Consequently, we reverse and remand for the jury to determine whether the adverse employment action element was met in this case.

### 3. Causation

Evidence that Defendants' actions against Reyes-Orta were politically motivated includes: (1) Maldonado-Vázquez's statements to her during the El Nuevo Día investigation;

(2) Sánchez-Casanova's warnings that she should be "careful"; (3) Sánchez-Casanova's similar statements to Vélez-Vélez; (4) Reyes-Orta's declaration that all the employees fired as a result of the audit were PDP members; and (5) the temporal proximity between the change in administration (January 2009), the El Nuevo Día investigation (April-September 2009), and the audit leading to her termination (starting sometime before December 2009).  Again, even with the Vélez-Vélez statements stricken, the rest of the evidence, taken together, raises an inference that Defendants' actions were politically motivated.

### 4.  Conclusion

Reyes-Orta made out a prima facie case of political discrimination.

### B.  Defendants' Mt. Healthy Defense

We now turn to the Defendants' Mt. Healthy defense. The key inquiry at summary judgment is whether Defendants can show -- with all reasonable inferences drawn in Reyes-Orta's favor -- that they had a lawful reason to terminate her, that they would have used that lawful reason to terminate her even if her political affiliation had not been a factor, and that there is no genuine dispute of material fact on these issues.

Here, assuming without deciding that Defendants had a lawful reason to terminate Reyes-Orta (either because she

-21-

committed fraud to get her initial position at PRHTA or because her transfer-promotion violated Puerto Rico law),[6] summary judgment was not appropriate because there is a genuine dispute of material fact as to whether Defendants would have terminated her absent political factors.

Defendants introduced evidence that all PRHTA personnel were to be audited pursuant to Resolution No. 2010-01, and that, as of December 28, 2011, fifty-three employees were audited, with forty-four having received intention to terminate letters. Of these, eleven employees had actually been terminated. Defendants provided no information about the political affiliation of these employees. Plaintiffs introduced evidence that the audit actually began before Resolution No. 2010-01 was issued in January 2010, that only ten employees were terminated as a result of the audit, and that all were PDP members, Plaintiffs also have evidence of comments by Maldonado-Vázquez and Sánchez-Casanova that Reyes-Orta would be fired because of her PDP affiliation.

This evidence is sufficient to create a genuine dispute as to whether Defendants would have fired Reyes-Orta regardless of her political affiliation. On the one hand, there is no

---

[6] Because we do not address the legality of Reyes-Orta's termination under Puerto Rico law, we do not address the district court's evidentiary rulings regarding the 2004 audit report by Encarnación and the 2009 audit report by Iris Azalia-Ocasio, which go only to that issue.

evidence that Defendants applied the audit in a discriminatory manner, since the PRHTA purported to audit "all PRHTA personnel," which presumably includes both PDP and NPP members. Evidence of the audit's disparate impact is not sufficient by itself to rebut a Mt. Healthy defense. Vélez-Rivera, 437 F.3d at 154. However, the audit began in a politicized atmosphere, illustrated by Sánchez-Casanova and Maldonado-Vázquez's comments to Reyes-Orta during the El Nuevo Día leak investigation. The timing of the agency's decision to pursue termination against Reyes-Orta is also somewhat suspicious, as she was audited twice before and nothing was done until Defendants perceived her to be involved in a leak of a political nature (a PDP legislator exposing NPP excesses to El Nuevo Día). Defendants do not make any argument that they acted against Reyes-Orta on the belief that she was responsible for the leak. A jury could reasonably infer from these facts that Reyes-Orta would not have been terminated but for Defendants' political animus. Accordingly, the district court erred in granting summary judgment based on Defendants' Mt. Healthy defense.

## IV. Conclusion

For the above reasons, we reverse the district court's grant of summary judgment on Plaintiffs' First Amendment claims and remand for the district court to reinstate the Puerto Rico

law claims that it dismissed in its summary judgment order, <u>see</u> <u>Fernández-Salicrup</u> v. <u>Figueroa-Sancha</u>, 790 F.3d 312, 328 (1st Cir. 2015), and to conduct further proceedings in harmony with this order.

**REVERSED AND REMANDED.**