# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 16-1731

———————————————

Jamie Mahn

*Plaintiff - Appellant*

v.

Jefferson County, State of Missouri

*Defendant - Appellee*

23rd Judicial Circuit, State of Missouri

*Defendant*

Wes Wagner, Individually and in his Official Capacity as County Clerk/Election Authority of Jefferson County, Missouri; Howard Wagner, Individually and in his Official Capacity as Circuit Clerk of the 23rd Judicial Circuit, Jefferson County, Missouri

*Defendants - Appellees*

Jeanette McKee, State of Missouri

*Defendant*

Mike Reuter, Circuit Clerk of Jefferson County

*Defendant - Appellee*

——————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Jamie L. Mahn brought a First Amendment patronage-discharge claim under 42 U.S.C. § 1983 against Jefferson County, Missouri; Howard Lee Wagner ("Howard"), individually and in his official capacity as circuit clerk of Missouri's 23rd Judicial Circuit; Howard Wesley Wagner ("Wes"), individually and in his official capacity as county clerk/election authority of Jefferson County; and Michael Reuter, in his official capacity as (successor) circuit clerk. The district court[1] granted summary judgment against Mahn. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part and remands in part.

I.

In 2012, Howard hired Mahn as a deputy clerk. In 2014, Howard did not run for reelection. He supported fellow Democrat Jeanette McKee. According to Mahn, Howard "summoned [her] into his office" to "forcefully impress upon [her] the need for her to vote for McKee and the Democratic ticket." She responded, "I'll vote for whoever I want to, and what you're threatening is unconstitutional."

_____

[1] Hon. Nannette A. Baker, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties under 28 U.S.C. § 636(c).

Mahn voted in the August 5, 2014 Republican primary election. She alleges that on August 26, Howard told her: "Just wanted to chat with you a little bit. Just wanted to let you know that, you know, I know how you voted. And I don't think you made the right decision. You know this could cause you your job." On September 19, 2014, Howard terminated Mahn's employment. Her termination letter stated: "Poor work performance, unable to complete tasks correctly and within given time lines. Abuse of sick leave, insubordination by lying to assigned supervisor."

Mahn believes Howard terminated her because he learned she voted in the Republican primary. She alleges that Wes—Howard's son—had "access to all voter information" because he was the county clerk/election authority. She claims Howard and Wes "reached a mutual agreement and understanding to commit the unlawful act of disclosing who [Mahn] had voted for, and thereafter, to discharge her from her employment for exercising her right to vote."

II.

The district court applied the framework from *Langley v. Hot Spring County, Arkansas*, 393 F.3d 814 (8th Cir. 2005). In *Langley*, this court explains that "a dismissal solely on account of an employee's political affiliation violates the First Amendment unless 'the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" **Langley**, 393 F.3d at 817, *quoting* **Branti v. Finkel**, 445 U.S. 507, 518 (1980). The *Langley* case notes that a prior decision from this court "extended the *Elrod–Branti* principle to include cases in which political affiliation was *a* motivating factor in the dismissal, rather than the sole factor." **Id.**, *citing* **Barnes v. Bosley**, 745 F.2d 501, 507 (8th Cir. 1984), *cert. denied*, 471 U.S. 1017 (1985). With the motivating-factor extension, *Langley* clarifies:

-3-

> [T]o resolve a claim under *Elrod* and *Branti* at the summary judgment stage, the district court first determines whether the plaintiff has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in the dismissal. If the plaintiff meets this burden, summary judgment must be denied unless the defendant establishes *either* that the political motive is an appropriate requirement for the job, *or* that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event.

*Id.* The "mixed motives" alternative comes from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See* **Barnes**, 745 F.2d at 507. By *Mt. Healthy*:

> [T]he burden of persuasion itself passes to the defendant-employer once the plaintiff produces sufficient evidence from which the fact finder reasonably can infer that the plaintiff's protected conduct was a "substantial" or "motivating" factor behind her dismissal. Accordingly, once the burden of persuasion shifts to the defendant-employer, the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons.

**Wagner v. Jones**, 664 F.3d 259, 270 (8th Cir. 2011), *quoting* **Acevedo–Diaz v. Aponte**, 1 F.3d 62, 67 (1st Cir. 1993).

Applying the *Langley* framework, the district court here assumed that "Mahn has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in her dismissal." But it granted summary judgment for Howard and Reuter because they "established that Mahn would have been terminated in any event."

"This court reviews de novo a grant of summary judgment." **Torgerson v. City of Rochester**, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). On appeal, Mahn claims

-4-

that the district court applied the mixed-motive analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*,

> the plaintiff must first make what our court has described as a "minimal evidentiary showing" necessary to establish a prima facie case of discrimination. At that point, the burden of *production* shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action, but the burden of *proof* remains with the plaintiff to show a genuine issue of fact that an impermissible consideration was a motivating factor in the employment decision.

***Davison v. City of Minneapolis, Minnesota***, 490 F.3d 648, 662-63 (8th Cir. 2007) (Colloton, J., concurring in the judgment in part and dissenting in part) (internal citations omitted). Mahn argues that by *McDonnell Douglas*, "when the trial court has before it direct evidence of improper motive [at the summary judgment stage] . . . it does not matter whether an employer produces evidence of a mixed-motive because the issue is one for the fact finder at trial." She says that she presented direct evidence, meaning summary judgment was improper.

Mahn, however, assumes *McDonnell Douglas* applies without considering *Mt. Healthy*. This court has inconsistent guidance about *McDonnell Douglas* and *Mt. Healthy*. One case holds that the type of evidence the plaintiff presents determines which test applies: "The so-called mixed motive analysis under *Mt. Healthy* is only used if a complainant has comes forward with evidence that directly reflects the use of an illegitimate criterion in the challenged decision." ***Graning v. Sherburne County***, 172 F.3d 611, 615 n.3 (8th Cir. 1999) (citation and internal quotation marks omitted); *see also* ***Davison***, 490 F.3d at 662-63 (Colloton, J., concurring in the judgment in part and dissenting in part) (citing *Graning* to conclude that *Mt. Healthy* "applies only where a plaintiff produces 'direct evidence' that the employer used the plaintiff's speech as a criterion in the promotion decision," while *McDonnell Douglas* applies when direct evidence is not available).

But another case holds that the type of claim—not the type of evidence—invokes *McDonnell Douglas* or *Mt. Healthy*. In *Jones*, this court noted that *Mt. Healthy* applies to First Amendment cases, while *McDonnell Douglas* applies in Title VII cases. **Jones**, 664 F.3d at 270. Other circuits use this approach. *See* **Walton v. Powell**, 821 F.3d 1204, 1210 (10th Cir. 2016) (Gorsuch, J.) ("It's surely notable, too, that almost every circuit to have considered whether *McDonnell Douglas* should apply in First Amendment discrimination or retaliation cases has thought the idea a poor one. . . . And notable that the only circuit with authority going the other way now seems uncertain. *Compare Graning v. Sherburne County*, 172 F.3d 611, 615 & n.3 (8th Cir. 1999), *with Wagner v. Jones*, 664 F.3d 259, 270 (8th Cir. 2011)."); **Allen v. Iranon**, 283 F.3d 1070, 1075 n.4 (9th Cir. 2002) (noting *Graning* conflicts with cases from the First, Second, Third, Fifth, Sixth, Seventh, and Tenth Circuits).

Under either *Graning* or *Jones*, the result here is the same: *Mt. Healthy* applies. Mahn contends she presented direct evidence, satisfying *Graning*. And this is a First Amendment case, satisfying *Jones*. Although the district court did not cite *Mt. Healthy*, it used the framework from this court's *Langley* decision. The mixed-motives alternative in *Langley* institutes the *Mt. Healthy* mixed-motives analysis.

This court need not resolve the issue Mahn presents—whether under *McDonnell Douglas*, direct evidence of improper motive at the summary-judgement stage makes mixed motives an issue for trial. An employer's *Mt. Healthy* defense can be decided on summary judgment even if the plaintiff presents direct evidence of improper motive. *See* **Walton**, 821 F.3d at 1211 ("it seems to us to follow naturally from *Mt. Healthy* (and in line with conventional practice) that a defendant seeking to prevail at summary judgment must show a reasonable factfinder either would have to reject the plaintiff's claim on the merits or accept its affirmative defense."); **McCue v. Bradstreet**, 807 F.3d 334, 346 (1st Cir. 2015) ("The *Mt. Healthy* defense, at the summary judgment stage, requires [the employer] to show that the record would

compel a reasonable jury to find that the adverse action *would have occurred* anyway
. . . .").

## III.

Mahn argues that the district court erred in ruling that Howard and Reuter established that she "would have been terminated in any event" for reasons besides her political affiliation.  In analyzing an employer's *Mt. Healthy* defense:

> The key inquiry at summary judgment is whether Defendants can show—with all reasonable inferences drawn in [the plaintiff's] favor—that they had a lawful reason to terminate her, that they would have used that lawful reason to terminate her even if her political affiliation had not been a factor, and that there is no genuine dispute of material fact on these issues.

***Reyes-Orta v. Puerto Rico Highway & Transp. Auth.***, 811 F.3d 67, 77 (1st Cir. 2016).  *See generally **Jones***, 664 F.3d at 270 ("We find the First Circuit's test on First Amendment discrimination to be well reasoned, based on Supreme Court precedent, and utilized in a similar manner by other circuits.").

## A.

The district court explained that Mahn did not "adequately refute[] the evidence that she made numerous docketing errors, the Clerk's office received complaints about her work from judges, other court staff, and the public, and that Mahn received notification about these performance issues."  A supervisor, Mike Bone, "averred that during the time he supervised Mahn, she 'consistently exhibited poor work performance,' 'was not doing her job,' and 'was pushing her work off on other clerks.'"  The evidence showed "that these performance issues occurred before Mahn's alleged discussion with Howard Wagner in July 2014 and the 2014 primary

election, including documentation of performance issues in 2013." Mahn asserts that her supervisor "Theresa Cusick was not a good supervisor" and that her supervisor Donna Reece "did not complain about her work." The district court ruled these assertions to be "insufficient in light of the evidence from the personnel file regarding her work performance."

True, Mahn had performance issues in 2013. There is also evidence that she had performance issues shortly before and shortly after the August 2014 primary. Despite the strength of this evidence of poor performance, the "*Mt. Healthy* defense, at the summary judgment stage, requires [the employer] to show that the record would compel a reasonable jury to find that the adverse action *would have occurred* anyway, not merely that such action *would have been warranted* anyway." **McCue v. Bradstreet**, 807 F.3d 334, 346 (1st Cir. 2015).

Howard and Reuter have not established Howard *would* have terminated Mahn anyway for her performance issues. Without evidence showing Mahn's performance would have indisputably caused her termination, Howard and Reuter were not entitled to summary judgment under *Mt. Healthy*. *See* **Reyes-Orta**, 811 F.3d at 77 ("assuming without deciding that Defendants had a lawful reason to terminate Reyes–Orta . . . summary judgment was not appropriate because there is a genuine dispute of material fact as to whether Defendants would have terminated her absent political factors.").

B.

Howard tries to avoid remand by asserting qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" **Pearson v. Callahan**, 555 U.S. 223, 231 (2009), *quoting* **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982). A public official is entitled to qualified immunity unless (1) "the official violated a

statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct." ***Ashcroft v. al–Kidd***, 563 U.S. 731, 735 (2011). The district court did not rule on this issue. The district court may consider it on remand. *See **Cody v. Weber***, 256 F.3d 764, 769 n.2 (8th Cir. 2001) ("We decline the prison officials' invitation to affirm the entry of summary judgment on the alternative grounds of qualified immunity. The district court did not rule on that issue in the first instance, but may consider the defense upon remand.").

C.

Reuter—sued only in his official capacity for equitable relief—tries to prevent remand by asserting Eleventh Amendment immunity. Mahn counters that the Eleventh Amendment does not bar "equitable, prospective relief" against a state official.

The Eleventh Amendment says: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has held that under *Ex Parte Young*, 209 U.S. 123 (1908), the amendment does not prohibit "certain suits seeking declaratory and injunctive relief against state officers." ***Idaho v. Coeur d'Alene Tribe***, 521 U.S. 261, 269 (1997). Specifically, "the *Ex Parte Young* doctrine describes an exception to Eleventh Amendment immunity for a state official where the relief sought is prospective and not compensatory." ***Heartland Acad. Cmty. Church v. Waddle***, 427 F.3d 525, 530 (8th Cir. 2005).

Against Reuter, Mahn "seeks declaratory relief that her employment was terminated in violation of the First Amendment of the United States Constitution, and the remedy of reinstatement to her position as a county clerk of the 23rd Judicial Circuit." Neither the declaratory relief claim nor the reinstatement remedy are

compensatory. "The goal of reinstatement . . . is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements." *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986). The Eleventh Amendment does not bar the relief of reinstatement. *Treleven v. University of Minnesota*, 73 F.3d 816, 819 (8th Cir. 1996) ("to the extent that the District Court, basing its decision on the Eleventh Amendment, granted summary judgment for Kidwell on Treleven's § 1983 claim for injunctive relief in the form of reinstatement, the judgment must be reversed."). In fact, "the great weight of case authority clearly supports treating reinstatement as an acceptable form of prospective relief that may be sought through *Ex parte Young*." *Nelson v. University of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (collecting cases from the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits). The Eleventh Amendment does not prevent remand.

IV.

Mahn challenges the grant of summary judgment for Wes and Jefferson County. "In a claim under § 1983, there must be evidence of a causal connection between the misconduct complained of and the official sued." *Naucke v. City of Park Hills*, 284 F.3d 923, 929 (8th Cir. 2002). "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (citation omitted).

The district court ruled that Mahn's claim failed on causation:

[T]here is no evidence that Wes Wagner or Jefferson County had any authority to terminate Mahn's employment or were personally involved in the decision to terminate her employment. There is no evidence that Wes Wagner or anyone representing Jefferson County told Howard Wagner that Mahn voted in the Republican primary by absentee ballot.

-10-

Mahn's claims against these defendants are based on unsubstantiated speculation.

Mahn disagrees. She believes that she presented "pretty good evidence" that Wes told Howard how she voted, leading to her dismissal. She relies on these alleged statements from Howard: (1) "I know how you vote. I don't see the ballots, but I know how you vote"; and (2) "Just wanted to chat with you a little bit. Just wanted to let you know that, you know, I know how you voted. And I don't think you made the right decision. You know this could cause you your job." She also notes that Howard "mentioned working someplace previously [where] two employees who were under him made sure he knew that they voted and he said little did they know that he already knew that they voted and how they voted."

Based on these statements, Mahn concludes that "the evidence demonstrates that Wes Wagner told Howard Wagner how Jamie Mahn had voted in the primary election." But—as conceded in her deposition—she points to only "speculation" that Wes told Howard how she voted. As the district court noted, "Wes Wagner averred in an affidavit that he did not know Mahn pulled a Republican absentee ballot . . . or that she voted in the Republican primary election," and that "he did not tell Howard Wagner that Mahn voted by absentee ballot in the Republican primary election." Mahn "produced no evidence to counter Wes Wagner's affidavit or testimony regarding the same." Nor does she direct this court to such evidence. She cites only "speculation, conjecture, or fantasy," which are insufficient to overcome a summary-judgment motion. *Mann*, 497 F.3d at 825.

Mahn also argues that Wes's and Jefferson County's lack of authority to terminate her is irrelevant. She relies on this court's decision in *Naucke*. There, a city administrator feuded with three city employees, threatening to terminate two of them if they did not censure the third. *Naucke*, 284 F.3d at 926. After being terminated, the two employees won a jury verdict against the city administrator on a § 1983

-11-

retaliation claim. *Id.* On appeal, the administrator challenged the sufficiency of the evidence, arguing that "it was the City Council or other members of city government who made the employment decisions, and his involvement was limited to ministerial acts, i.e., drafting letters for others." *Id.* at 929. This court disagreed: "the jury could reasonably have concluded [that the city administrator] improperly influenced the decision-making process, and was able to make good on his threat to have [the employees] terminated." *Id.*

Under *Naucke*, a state actor can—in some situations—be subject to § 1983 liability for retaliation where that actor "improperly influenced the decision-making process." *Id.* Besides her speculation that Wes told Howard how she voted, Mahn has not presented any evidence that Wes improperly influenced the decision-making process. The district court did not err. *See Mann*, 497 F.3d at 825.

*******

The judgment is affirmed in part, reversed in part, and the case remanded for proceedings consistent with this opinion.

_____